Tharan Gregory Lanier, Bar No. 138784 (Lead Counsel)
tglanier@jonesday.com
Evan M. McLean, Bar No. 280660
emclean@jonesday.com
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, California  94303
Telephone:     +1.650.739.3939
Facsimile:     +1.650.739.3900

Michael A. Lavine, Bar No. 321727
mlavine@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Sachin M. Patel (admitted *pro hac vice*)
smpatel@jonesday.com
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL  60606
Telephone:     +1.312.782.3939
Facsimile:     +1.312.782.8585

Peter Young Kim (admitted *pro hac vice*)
pkim@jonesday.com
JONES DAY
51 Louisiana Ave, N.W.
Washington DC, 20001
Telephone:     +1.202.879.3939
Facsimile:     +1.202.626.1700

*Attorneys for Plaintiff Google LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOOGLE LLC,** | **Case No. 3:25-cv-08107-TLT** |
| **Plaintiff,** | **PLAINTIFF GOOGLE LLC'S RESPONSES TO QUESTIONS FOR THE PARTIES** |
| **v.** | |
| **K.MIZRA LLC,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Google provides the following responses below to this Court's questions directed to Plaintiff and to both Parties. ECF 40 at 1. Because Google seeks to proceed with oral argument, the parties do not jointly request to submit the matter based upon the written responses to the Court's questions and the briefing.

## I.   **PERSONAL JURISDICTION**

**A.**   The parties are currently engaged in litigation in Texas. *See K.Mizra LLC v. Google LLC*, No. 1:25-cv-236 (W.D. Texas). Google ("Plaintiff") alleges that K.Mizra's counsel sent a proposed amended complaint to Google's counsel related to the Texas litigation, wherein K.Mizra alleged infringement of the '717 and the '120 Patents. Compl. ¶ 14. Plaintiff further asserts that:

From February to June 2025, K.Mizra continuously contacted Google, notified a Google employee located in California of the Texas action, repeatedly discussed its licensing demand of the Patent Portfolio with another Google employee located in California, and provided Google's outside counsel with the unfiled amended complaint alleging the new Patents-in-Suit with new accused products.

ECF 33 at 10. Plaintiff appears to acknowledge and K.Mizra asserts that these contacts only occurred during the course of and related to communications with Google's counsel in the Texas action. Compl. ¶ 36, 44.

**i.**   **To Plaintiff:** Does Plaintiff contest that the contact described above, and which gives rise to this action, were made in connection with the litigation in *K.Mizra LLC v. Google LLC*, No. 1:25-cv-236 (W.D. Texas)?

## PLAINTIFF GOOGLE'S RESPONSE:

Yes, Google contests that all the contacts described in the Court's question and which give rise to this action were made in connection with the Texas case, for several reasons.

*First*, the above-mentioned contacts during 2025 are not all "related to communications with Google's counsel in the Texas action" or "in connection with the litigation" in Texas. ECF 40 at 1. The communication on or about March 6, 2025 from K.Mizra's CEO to the first Google employee referenced prior licensing efforts and related generally to discussing a license to K.Mizra's patent portfolio. Compl. ¶ 11. This communication was not with Google's counsel in the Texas action. Compl. ¶ 11. Rather, this communication resulted from K.Mizra's CEO resuming his licensing communications directed at Google in California. Subsequent communications occurred between K.Mizra's CEO and a Google employee who also had direct oversight over the Texas litigation.

*Second*, although Google does not contest that the above-mentioned contacts during 2025

1

PLAINTIFF GOOGLE LLC'S RESPONSES TO QUESTIONS FOR THE PARTIES

were made during the pendency of the Texas action, the legal import of these specific contacts is not subsumed by the Texas litigation, as explained further in part ii below.  The '717 and the '120 Patents (collectively, "Patents-in-Suit") never became part of the Texas action because K.Mizra did not file its proposed amended complaint.  Instead, "K.Mizra's counsel emailed Google's counsel, explaining that K.Mizra 'decided against amending their complaint *at this time*.'"  Compl. ¶ 15 (citing Ex. 6) (emphasis added).  K.Mizra's amplified threat to assert new patents against new products unrelated to those in the Texas action gave rise to Google's need for a declaratory judgment of non-infringement.

*Third*, Google respectfully contends that the specific contacts addressed in the Court's question should be assessed holistically, considering K.Mizra's extensive contacts directed toward California, such as pre-litigation contact with Google, the enhanced threat by a draft amended complaint, and K.Mizra's extensive contacts with other California entities (including offering licenses and purchasing patents from California residents), all of which allow this Court to exercise personal jurisdiction over K.Mizra in California.

> ii.    **To Plaintiff:**  Explain why these contacts are not sufficiently related to the ongoing litigation in *K.Mizra LLC v. Google LLC*, No. 1:25-cv-236 (W.D. Texas)?

**PLAINTIFF GOOGLE'S RESPONSE:**

These contacts are not sufficiently related to the ongoing litigation in Texas because K.Mizra's contacts give rise to materially different issues from the Texas action.

*First*, the Patents-in-Suit and accused products here bear no relation or similarity to Texas Asserted Patents.  Rather, and as explained in Google's opposition brief, the Patents-in-Suit relate to completely different technologies from the Texas Asserted Patents, and each matter accuses completely different products.  ECF 33 at 2-3.  The Texas Asserted Patents generally relate to network security and accuse Google's Chrome Enterprise Premium product.  Compl. ¶ 6.  In contrast, the Patents-in-Suit relate to wireless mesh networks (the '717 Patent) and determining hyperparameters in a machine learning system (the '120 Patent) and are asserted respectively against several Google Nest products and Google's Vertex AI Studio offering.  Compl. ¶ 38 (citing Ex. 4); *see also* ECF 1-4 ¶¶ 10, 78 (Ex. 4); Compl. ¶ 46 (citing Ex. 4).  The Texas Asserted Patents

2

and the Patents-in-Suit also have different inventors and originated from different entities. *See* ECF 1-4 ¶¶ 9–10 (Ex. 4). These significant technical differences have legal import as they broaden the enforcement efforts by K.Mizra. In short, K.Mizra's proposed amended complaint presented a substantively new lawsuit, as it introduced new patents, new products, and new infringement theories. *Second*, KMZ's licensing demands to Google's California employees were independent of the Texas litigation. *Third*, K.Mizra's contacts during 2025 related to its larger patent portfolio including the Patents-in-Suit and the Texas Asserted Patents. At their core and taken together, the above-mentioned contacts during 2025 comprise new and broader enforcement issues directed at California because the draft amended complaint here is a new imminent and amplified threat of litigation in conjunction with K.Mizra's further contacts proposing portfolio patent licenses.

> **a.** **All Parties:** As such, explain why these contacts do or do not create grounds for the Court to exercise personal jurisdiction over K.Mizra in California?
> *a.* In addressing the question above, please refer to the Federal Circuit's reasonableness factors articulated in *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1153 (Fed. Cir. 2021) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316-17 (1945)). Particularly, focus on factor 4, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Id.*

**PLAINTIFF GOOGLE'S RESPONSE:**

The above-mentioned contacts during 2025 in addition to K.Mizra's broader contacts directed toward California, including the pre-litigation contacts with Google, the amplified threat by a draft amended complaint, and K.Mizra's extensive contacts with other California entities, including offering licenses and purchasing patents from California residents, create grounds for this Court to exercise personal jurisdiction over K.Mizra in California.

Regarding the above-mentioned contacts during 2025, personal jurisdiction is satisfied here for a simple reason: K.Mizra escalated the above-mentioned contacts during 2025 from an initial licensing discussion to an amplified, imminent threat of infringement. Compl. ¶¶ 11–19. Personal jurisdiction was found under similar circumstances in *Trimble* where the defendant went from threatening a certain amount of patents against specific accused products to asserting numerous *additional* patents and products, thus amplifying threats of infringement. 997 F.3d at 1156–57.

The Federal Circuit's reasonableness factors are also satisfied here for the reasons specified

PLAINTIFF GOOGLE LLC'S ANSWERS TO QUESTIONS FOR THE PARTIES

in Google's opposition brief regarding factors 2-5, which K.Mizra did not contest.  ECF 24 at 11–14.  Google will briefly address each factor as requested, with a focus on factor 4.

*(1) The burden on the defendant.*  K.Mizra "has repeatedly filed lawsuits in the Eastern [or Western] District of Texas, which is far from" Florida, *Trimble*, 997 F.3d at 1158, and this requires it to travel over 1,000 miles away from its principal place of business.  "By the very nature of its business as a non-practicing patent holder," K.Mizra "must litigate its patents in the United States in fora far from its [home]," thus "mitigating any burden on it as the defendant."  *Id.* (cleaned up).

*(2) The forum state's interest in adjudicating the dispute.*  "California has definite and well defined interests in commerce and scientific development, and [it] has a substantial interest in protecting its residents from unwarranted claims of patent infringement."  *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1356 (Fed. Cir. 2017) (cleaned up).

*(3) The plaintiff's interest in obtaining convenient and effective relief.*  Google, "which is headquartered in California, indisputably has an interest in protecting itself from patent infringement by obtaining relief 'from a nearby federal court' in its home forum."  *Id.*

*(4) The interstate judicial system's interest in obtaining the most efficient resolution of controversies.*  Jurisdiction over Google's claims in California would result in an efficient resolution of the controversy.  In the Texas action, trial is currently scheduled for November 2, 2026.  The parties are well into discovery, including ongoing deposition scheduling, multiple document productions from the parties and third parties, and source code review.  As explained previously, there are no overlapping infringement issues with the Texas action as they involve completely different patents and accused products.  Moreover, the relevant evidence and Google witnesses relating to the accused products here are distinct from those in the Texas action, including evidence relating to product development, commercial strategy, and marketing.  In fact, separate trials would likely be needed for each of the Patents-in-Suit due to their different technologies.  Adding another unrelated technology at issue would exacerbate this issue. Transferring this matter would merely create a new matter, separate from the ongoing Texas matter, and cause delays by forcing the parties to start with a new case schedule.  Consolidating the matter in Texas would also be untenable because it would disrupt the existing schedule in the Texas action, prejudice the parties

4

who have relied on that schedule, and impose unnecessary delay on both actions. This would increase the burden on the Courts and the parties, and undermine the efficient resolution of both cases.

*(5) The shared interest of the several states in furthering fundamental substantive social policies.* In this case, "there does not appear to be any conflict between the interests of California and any other state, because 'the same body of federal patent law would govern the patent noninfringement claim irrespective of the forum.'" *Trimble*, 997 F.3d at 1159. Accordingly, this factor is, at worst, neutral.

 **B.** Plaintiff asserts that on March 7, 2023, "K.Mizra sought Google to take a license to K.Mizra's Patent Portfolio" which included the Patents-in-Suit. Compl. ¶ 10. This contract would have occurred prior to the initiation of the Texas litigation and does not relate to settlement discussions.

  **i.** **All Parties:** To Both Parties: Please address whether this *pre-litigation communication* should confer specific personal jurisdiction in light of the Federal Circuit's ruling that "a defendant may not be subjected to personal jurisdiction if its only additional activities in the forum state involve unsuccessful attempts to license the patent there," even "where the defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees . . ." *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006).

**PLAINTIFF GOOGLE'S RESPONSE:**

*Breckenridge* is not the appropriate standard here. As *Trimble* and other recent Federal Circuit cases make clear, a broader assessment is required and the facts here involve more extensive contacts. Before the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), the Federal Circuit took a narrower review of whether a defendant's licensing activities could subject it to personal jurisdiction. *Breckenridge*'s statement above was based on authority applying more of a bright-line rule to isolated licensing attempts. 444 F.3d at 1366 (relying on *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351 (Fed. Cir. 2002)). Other circuits applied this approach. *See, e.g.*, *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 253 (5th Cir. 2019) ("Neither this nor any other circuit has held that specific jurisdiction may arise solely from a defendant licensor's non-exclusive licenses to third parties who sell allegedly infringing products in the forum state, and at least one circuit has explicitly rejected such a

PLAINTIFF GOOGLE LLC'S ANSWERS TO QUESTIONS FOR THE PARTIES

theory.").

K.Mizra's contacts are much more extensive. Rather, a broad assessment of K.Mizra's extensive contacts directed toward California (including the pre-litigation licensing communications with Google, post-litigation conduct, the amplified threat by a draft amended complaint, and K.Mizra's extensive contacts with other California entities, including offering licenses and purchasing patents from California residents) confirms that this Court can exercise personal jurisdiction over K.Mizra in California.

Recent Federal Circuit precedent confirms the use of a broader approach than *Breckenridge* to assess contacts, and that approach supports jurisdiction here. Following the *Ford* decision, *Trimble* applied the Supreme Court's reasoning and instructed "just as sales of similar vehicles and the presence of dealerships in a forum can support personal jurisdiction in the tort context, ***so too can nonexclusive patent licenses in this case***." 997 F.3d at 1156 (emphasis added). *Trimble* explained that "*Ford* has established that a ***broad set of a defendant's contacts with a forum are relevant*** to the minimum contacts analysis." *Id.* (emphasis added). And, crucially, contacts that are "***not directly related to the underlying suit***" still are relevant in the assessment. *Id.* More recent Federal Circuit precedent demonstrates that *Breckenridge*'s bright-line rule approach is inconsistent with Supreme Court and Federal Circuit precedent. *Apple Inc. v. Zipit Wireless, Inc.*, reasoned that "[a]lthough some of our earlier precedent relying on *Red Wing Shoe* suggests that there is such a bright-line rule, *see, e.g.*, . . . *Breckenridge*, 444 F.3d at 1362 . . . Supreme Court precedent (both pre- and post-*Red Wing Shoe*) has made clear that jurisdictional inquiries ***cannot rest on such bright-line rules***—there are no 'talismanic jurisdictional formulas.'" 30 F.4th 1368, 1378 (Fed. Cir. 2022) (emphasis added). At bottom, as *Trimble* has now articulated, a broader assessment is part of the relevant standard and nonexclusive patent licensing efforts in this case may support personal jurisdiction.

## II.   DISMISSAL OR TRANSFER

A.   **To Both Parties:** If the Court finds that it lacks jurisdiction the Court must decide whether to dismiss the action or "in the interest of justice, transfer such action . . .

6

to any other such court in which the action . . . could have been brought at the time it was filed or noticed." *See* 28 U.S.C. § 1631.

    **a.**    If the Court finds that it lacks personal jurisdiction, please discuss whether this action should be transferred to the Western District of Texas.

**PLAINTIFF GOOGLE'S RESPONSE:**

Google respectfully disagrees that this Court should transfer this case to the Western District of Texas were the Court to find it lacks personal jurisdiction. As discussed above, this case involves completely different patents, technology, and accused products from the Western District of Texas matter. Google expects that, other than K.Mizra's principal, there will be no overlap in witnesses between the cases, and, given the advanced state of the Texas matter, separate proceedings and trials will be necessary. As Google requested in its opposition brief (ECF 33 at 16-18), if the Court has questions about its jurisdiction over K.Mizra, the Court should permit Google to take jurisdictional discovery into K.Mizra's contacts with California as this court has done in *Netskope, Inc. v. K.Mizra LLC*, Case No. 25-cv-04833-RS, ECF 29 (N.D. Cal. Sep. 4, 2025).

Moreover, this case has greater connections to this District than the Western District of Texas for at least three reasons. *First*, the Northern District of California is Google's preferred forum as Google is headquartered and conducts relevant business here, including the development of the accused technologies. Key witnesses and relevant documents are located in the Northern District of California. *See, e.g.*, Compl. ¶¶ 8–20. Transfer would impose greater cost and burden upon Google. *Second*, the Northern District of California has a compelling interest in adjudicating legal rights and protecting its residents from legal uncertainty, especially involving technology developed in this District. *Third*, K.Mizra, despite being a Delaware company with its principal place of business in Florida, and no apparent connection to Texas, routinely sues California companies in Texas as a forum-shopping technique and transferring the matter to Texas would further enable K.Mizra's forum-shopping strategy.

**III.**    **CONCLUSION**

Google respectfully submits the above answers to this Court's questions for the parties.

PLAINTIFF GOOGLE LLC'S ANSWERS TO QUESTIONS FOR THE PARTIES

Dated: March 20, 2026

By: /s/ *Tharan Gregory Lanier*
Tharan Gregory Lanier

JONES DAY
Tharan Gregory Lanier (Lead Counsel)
Evan M. McLean
Michael A. Lavine
Sachin M. Patel
Peter Young Kim

***Attorneys for Plaintiff***
***Google LLC***

8

PLAINTIFF GOOGLE LLC'S ANSWERS TO QUESTIONS FOR THE PARTIES